# Immunity of the Former Counsel to the President From Compelled Congressional Testimony

The former Counsel to the President is immune from compelled congressional testimony about matters that arose during her tenure as Counsel to the President and that relate to her official duties in that capacity and is not required to appear in response to a subpoena to testify about such matters.

July 10, 2007

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether Harriet Miers, the former Counsel to the President, is legally required to appear and provide testimony in response to a subpoena issued by the Committee on the Judiciary of the House of Representatives. The Committee, we understand, seeks testimony from Ms. Miers about matters arising during her tenure as Counsel to the President and relating to her official duties in that capacity. Specifically, the Committee wishes to ask Ms. Miers about the decision of the Justice Department to request the resignations of several United States Attorneys in 2006. *See* Letter for Harriet E. Miers, from John Conyers, Jr., Chairman, House Committee on the Judiciary (June 13, 2007). For the reasons discussed below, we believe that Ms. Miers is immune from compulsion to testify before the Committee on this matter and, therefore, is not required to appear to testify about this subject.

Since at least the 1940s, administrations of both political parties have taken the position that "'the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee.'" *Assertion of Executive Privilege With Respect to Clemency Decision*, 23 Op. O.L.C. 1, 4 (1999) (opinion of Attorney General Janet Reno) (quoting Memorandum for All Heads of Offices, Divisions, Bureaus and Boards of the Department of Justice, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Executive Privilege* at 5 (May 23, 1977)). This immunity "is absolute and may not be overborne by competing congressional interests." *Id.*

Assistant Attorney General William Rehnquist succinctly explained this position in a 1971 memorandum:

> The President and his immediate advisers—that is, those who customarily meet with the President on a regular or frequent basis—should be deemed absolutely immune from testimonial compulsion by a congressional committee. They not only may not be examined with respect to their official duties, but they may not even be compelled to appear before a congressional committee.

Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal

Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971). In a 1999 opinion for President Clinton, Attorney General Reno concluded that the Counsel to the President "serves as an immediate adviser to the President and is therefore immune from compelled congressional testimony." *Assertion of Executive Privilege*, 23 Op. O.L.C. at 4.

The rationale for the immunity is plain. The President is the head of one of the independent branches of the federal government. If a congressional committee could force the President's appearance, fundamental separation of powers principles—including the President's independence and autonomy from Congress—would be threatened. As the Office of Legal Counsel has explained, "[t]he President is a separate branch of government. He may not compel congressmen to appear before him. As a matter of separation of powers, Congress may not compel him to appear before it." Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1982) ("Olson Memorandum").

The same separation of powers principles that protect a President from compelled congressional testimony also apply to senior presidential advisers. Given the numerous demands of his office, the President must rely upon senior advisers. As Attorney General Reno explained, "in many respects, a senior advisor to the President functions as the President's alter ego, assisting him on a daily basis in the formulation of executive policy and resolution of matters affecting the military, foreign affairs, and national security and other aspects of his discharge of his constitutional responsibilities." *Assertion of Executive Privilege*, 23 Op. O.L.C. at 5.[1] Thus, "[s]ubjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters relating to the performance of his constitutionally assigned functions*." Id.; see also* Olson Memorandum at 2 ("The President's close advisors are an extension of the President.").[2]

The fact that Ms. Miers is a former Counsel to the President does not alter the analysis. Separation of powers principles dictate that former presidents and former senior presidential advisers remain immune from compelled congressional

---

[1] In an analogous context, the Supreme Court held that the immunity provided by the Speech or Debate Clause of the Constitution to members of Congress also applies to congressional aides, even though the Clause refers only to "Senators and Representatives." U.S. Const. art I, § 6, cl. 1. In justifying expanding the immunity, the Supreme Court reasoned that "the day to day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos." *Gravel v. United States*, 408 U.S. 606, 616–17 (1972). Any other approach, the Court warned, would cause the constitutional immunity to be "inevitably . . . diminished and frustrated." *Id.* at 617.

[2] *See also History of Refusals by Executive Branch Officials to Provide Information Demanded by Congress*, 6 Op. O.L.C. 751, 771–72 (1982) (documenting how President Truman directed Assistant to the President John Steelman not to respond to a congressional subpoena seeking information about confidential communications between the President and one of his "principal aides").

testimony about official matters that occurred during their time as President or senior presidential advisers. Former President Truman explained the need for continuing immunity in November 1953, when he refused to comply with a subpoena directing him to appear before the House Committee on Un-American Activities. In a letter to that committee, he warned that "if the doctrine of separation of powers and the independence of the Presidency is to have any validity at all, it must be equally applicable to a President after his term of office has expired when he is sought to be examined with respect to any acts occurring while he is President." *Texts of Truman Letter and Velde Reply*, N.Y. Times, Nov. 13, 1953, at 14 (reprinting November 12, 1953 letter by President Truman). "The doctrine would be shattered, and the President, contrary to our fundamental theory of constitutional government, would become a mere arm of the Legislative Branch of the Government if he would feel during his term of office that his every act might be subject to official inquiry and possible distortion for political purposes." *Id*. In a radio speech to the Nation, former President Truman further stressed that it "is just as important to the independence of the Executive that the actions of the President should not be subjected to the questioning by the Congress after he has completed his term of office as that his actions should not be questioned while he is serving as President." *Text of Address by Truman Explaining to Nation His Actions in the White Case*, N.Y. Times, Nov. 17, 1953, at 26.

Because a presidential adviser's immunity is derivative of the President's, former President Truman's rationale directly applies to former presidential advisers. We have previously opined that because an "immediate assistant to the President may be said to serve as his alter ego . . . the same considerations that were persuasive to former President Truman would apply to justify a refusal to appear [before a congressional committee] by . . . a former [senior presidential adviser], if the scope of his testimony is to be limited to his activities while serving in that capacity." Memorandum for the Counsel to the President, from Roger C. Cramton, Assistant Attorney General, Office of Legal Counsel, *Re: Availability of Executive Privilege Where Congressional Committee Seeks Testimony of Former White House Official on Advice Given President on Official Matters* at 6 (Dec. 21, 1972).

Accordingly, we conclude that Ms. Miers is immune from compelled congressional testimony about matters, such as the U.S. Attorney resignations, that arose during her tenure as Counsel to the President and that relate to her official duties in that capacity, and therefore she is not required to appear in response to a subpoena to testify about such matters.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*